**United States District Court**
**District of Massachusetts**

```
                                    )
MUELLER SYSTEMS, LLC,               )
                                    )
          Plaintiff                 )
                                    )
          v.                        )    Civil Action No.
                                    )    15-12916-NMG
ROBERT TETI and                     )
ITET CORPORATION,                   )
                                    )
          Defendants.               )
                                    )
                                    )
                                    )
```

<u>**MEMORANDUM & ORDER**</u>

**Gorton, J.**

Mueller Systems, LLC ("plaintiff" or "Mueller Systems") brings this action against ITET Corporation ("ITET") and Robert Teti ("Teti") (collectively "defendants") seeking a declaratory judgment that plaintiff did not misappropriate defendants' alleged trade secrets or confidential information. At issue here is defendants' motion to dismiss for lack of personal jurisdiction and pursuant to the Court's discretion under the Declaratory Judgment Act. Alternatively, defendants ask this Court to stay the proceedings pending the outcome of related litigation in Canada. For the reasons that follow, this motion to dismiss will be allowed.

I.   **Background**

    A.   **Factual Background**

Mueller Systems is a limited liability company ("LLC") organized under Delaware law with its principal place of business in Middleboro, Massachusetts.  Plaintiff does not divulge the residency of the member (or members) of the LLC but the Court presumes for the purpose of this memorandum and order that such member or members are jurisdictionally diverse from the defendants.  Robert Teti is a resident of Ontario, Canada and the President and sole owner of ITET Corporation, an Ontario corporation.

In 2002, Teti began developing an electronic water valve system.  To facilitate development, Teti approached Mueller Canada Ltd. ("Mueller Canada") and the parties executed a confidentiality agreement in April, 2002.  That agreement was executed by Mueller Canada on behalf of Mueller Co. Ltd. ("Mueller Co.") and created a perpetual confidentiality obligation for Mueller Canada, Mueller Co. and their affiliates, including Mueller Water Products Inc. ("Mueller Water Products") and Mueller International, LLC ("Mueller International") (collectively "the Mueller entities").  The parties worked for years to develop and test the valve, identifying some issues with the design.

In September, 2009, ITET and Mueller Canada on behalf of itself and Mueller Co. entered a two-year Supply Agreement ("Agreement") for the ITET Digital Water System.  Under that Agreement, Mueller Canada received the exclusive right to market the valve in North America in exchange for development, testing and mass production expertise, which were already being provided by Mueller.  ITET retained ownership of all intellectual property and patents related to the valve.  That Agreement expired in September, 2012 when Mueller Canada allowed the Agreement to lapse.

In 2008, Mueller Technologies, LLC, acquired Arkion Systems Inc. ("Arkion") and changed its name to Mueller Systems.  That newly formed entity is an indirect subsidiary of Mueller Water Products.  In 2010, Mueller Systems began developing a remotely controlled water valve based on technology purportedly developed by Arkion.  It began publicly advertising that valve as the 420 RDM device in 2012.  After reviewing that technology and the patent Mueller acquired on it, ITET and Teti filed suit in Canada alleging, inter alia, misappropriation of confidential information and intellectual property in the development of Mueller's 420 RDM device.

**B.    Procedural Background**

**1.    The Canadian Litigation**

In October, 2013, defendants brought an action in Canada against the Mueller entities, claiming, <u>inter</u> <u>alia</u>, that those entities as a common enterprise misused defendants' confidential information and intellectual property and thereby breached a duty owed based on the contractual relationship between the parties ("the Canadian Litigation").  In February, 2015, Mueller moved to amend their answer by withdrawing the admission that Mueller Systems was an unincorporated division of Mueller Water Products.  Mueller would not consent to adding Mueller Systems to the Canadian Litigation on the grounds that they were already party to a similar proceeding in the Eastern District of Virginia.  Mueller then filed a motion to dismiss in the Canadian Litigation, claiming, <u>inter</u> <u>alia</u>, that Mueller Systems was the sole developer of the 420 RDM device.  In July, 2015, the Ontario court denied Mueller's motion for summary judgment and subsequently, Mueller Systems was added as a party to the Canadian Litigation.

**2.    The U.S. Litigation**

In February, 2015, shortly before the Mueller entities amended their answer in Canada, Mueller Systems and Mueller International filed a complaint against defendants in the Eastern District of Virginia ("the Virginia Litigation").

Mueller sought a three part declaratory judgment stating that Mueller Systems and Mueller International were not infringing an ITET U.S. patent, that a Mueller U.S. patent was not subject to a claim of joint ownership by defendants, and that Mueller Systems and Mueller International did not misappropriate defendants' trade secrets or confidential information.  During the early course of that litigation, ITET and Teti agreed not to pursue their two potential U.S. patent claims.

### 2.   Present Action

In July, 2015, Mueller Systems filed the present action in the District of Massachusetts against defendants seeking a declaratory judgment that plaintiff did not misappropriate defendants' confidential information or trade secrets.  One day later, Mueller Systems and Mueller International voluntarily dismissed their suit in the Eastern District of Virginia.  In November, 2015, defendants filed a motion to dismiss this action for lack of personal jurisdiction and pursuant to the Court's discretion under the Declaratory Judgment Act.

## III. <u>Analysis</u>

### A.   Personal Jurisdiction

On a motion to dismiss for want of personal jurisdiction, plaintiff bears the burden of showing that the Court has authority to exercise jurisdiction over defendants. <u>See</u> <u>Mass. Sch. of Law at Andover, Inc.</u> v. <u>ABA</u>, 142 F.3d 26, 33-34 (1st

Cir. 1998).  The Court must take facts alleged by plaintiff as true and construe disputed facts favorably towards plaintiff. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). Facts alleged by defendants are relevant as long as they are not contradicted by plaintiff. See ABA, 142 F.3d at 34.

In a diversity suit, this Court acts as "the functional equivalent of a state court sitting in the forum state." See Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009).  As such, this Court must determine whether (1) jurisdiction is permitted by the Massachusetts long-arm statute and (2) the exercise of jurisdiction coheres with the Due Process Clause of the United States Constitution. Id.

The Massachusetts long-arm statute, MASS. GEN. LAWS. ch. 223A, § 3, extends jurisdiction to the limits of the United States Constitution. See Tatro v. Manor Care, Inc., 625 N.E.2d 549, 553 (Mass. 1994).  Accordingly, this Court need not further consider the statute's applicability and may proceed to the due process question. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002).

Due process demands a showing of general or specific jurisdiction by plaintiff. See Negron-Torres v. Verizon Commc'n, Inc., 478 F.3d 19, 24 (1st Cir. 2007).  Plaintiffs must demonstrate that defendants have made sufficient contacts with

the forum state to justify the exercise of either specific or general jurisdiction by this Court. Id.

### 1.    General Jurisdiction

This Court may assert general jurisdiction over defendants when the present case is not based on contact with the forum state but defendants maintain unrelated, continuous and systematic activity in the forum. See United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St., 960 F.2d 1080, 1088 (1st Cir. 1992).  Exercising general jurisdiction over an entity that is neither incorporated nor has its principal place of business in the forum is exceptional. See Dailmer AG v. Bauman, 134 S. Ct. 746, 761 (2014).  Teti is a Canadian citizen and ITET Corporation is a Canadian corporation operating principally in Canada.  Plaintiff alleges four unexceptional meetings in Massachusetts between the defendants, Mueller Co. and Asahi America, Inc. ("Asahi"), a manufacturer working to prototype the water valve.  Those meetings occurred over a four-year period but because defendants cannot be deemed "at home" in Massachusetts based on such contacts, this Court will not exercise general jurisdiction over them. Id.

### 2.    Specific Jurisdiction

Alternatively, this Court may assert specific jurisdiction when defendants have certain minimum contacts with Massachusetts such that the maintenance of the suit does not offend

"traditional notions of fair play and substantial justice."
Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. &
Placement, 326 U.S. 310, 316 (1945) (internal quotation marks
omitted).  When assessing contacts, this Court must consider
three factors: relatedness, purposeful availment and
reasonableness. See Astro-Med Inc., 591 F.3d at 9.

### a. Relatedness

The relatedness factor depends upon "whether the claim
underlying the litigation... directly arise[s] out of or
relate[s] to, the defendant's forum-state activities." Id.
(internal quotation marks omitted).  The relationship between
the claim and the forum-state conduct cannot be remote. See
Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005).
The relatedness inquiry is, however, a "flexible, relaxed
standard." Pritzker v. Yari, 42 F.3d 53, 60–61 (1st Cir. 1994).

Plaintiff alleges four meetings between defendants, Mueller
Co. and Asahi in Massachusetts to develop defendants' water
valve, resulting in a prototype manufactured by Asahi in Malden,
Massachusetts.  The present case focuses upon whether plaintiff
misappropriated trade secrets and confidential information
disclosed to a related entity in the forum; it arises from
forum-based activities between defendants and plaintiff's
affiliate. See Phillips Exeter Acad. v. Howard Phillips Fund,
196 F.3d 284, 290 (1st Cir. 1999).  Mueller's claim appears

intended to clarify its potential liability as it relates to a related entity's conduct.  As such, defendants' forum state contacts are neither "attenuated" nor "indirect" with respect to the present declaratory judgment action. Harlow, 432 F.3d at 61.

### b. Purposeful Availment

This Court must also consider whether defendants purposefully availed themselves of the forum, taking advantage of the state's laws and making their appearance before the Court foreseeable. See Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995).  This factor concerns whether defendants' contacts were voluntary and foreseeable. See Astro-Med, Inc., 591 F.3d at 10.  If defendants do not benefit from a contact "in a way that makes jurisdiction foreseeable," then they have not purposefully availed themselves of the forum even if the contact is voluntary. See Phillips Exeter Acad., 196 F.3d at 292.

Defendants' contacts, a handful of business meetings in Massachusetts, cannot be characterized as either "random, fortuitous, or attenuated" or "the unilateral activity of another party or a third person." See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal quotation marks omitted).  Moreover, defendants took advantage of Massachusetts law while meeting in the forum, making the exercise of jurisdiction foreseeable. See Burnham v. Superior Court of California, Cty. of Marin, 495 U.S. 604, 606 (1990) (concluding

- 9 -

defendants take advantage of state benefits, such as public safety services, roadways, legal protections and the right to bring an action in court, by briefly visiting a state).  Because defendants met voluntarily in Massachusetts to develop the water valve system, this Court is satisfied that they have purposefully availed themselves of the forum.

### c. Reasonableness

Finally, this Court must consider a number of "Gestalt factors," including: (1) defendants' burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in obtaining efficient resolution of controversies and (5) the common interest of all sovereigns in promoting substantive social policies. See Burger King Corp., 471 U.S. at 477.  These factors are not a checklist but a set of considerations used "to put into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction...." See Pritzker, 42 F.3d at 64.  Taken together, these factors "may tip the constitutional balance" in close calls. Id.

With respect to the first factor, defendants argue that subjecting defendants, both from Canada, to a foreign court proceeding is burdensome.  Defending a claim in a foreign jurisdiction is, however, inherently inconvenient. See Pritzker,

42 F.3d at 64.  Furthermore, defendants' burden is neither
special nor unusual.  Id.  While defendants are often the natural
plaintiffs in a declaratory judgment action, the action is
designed to give the natural defendant an opportunity to
expedite conflict resolution, minimize losses and prevent the
accumulation of damages.  See Dow Jones & Co. v. Harrods, Ltd.,
237 F. Supp. 2d 394, 405 (S.D.N.Y. 2002), aff'd, 346 F.3d 357
(2d Cir. 2003).  Furthermore, in light of the Court's discussion
of defendants' forum contacts, the conflict is sufficiently
related to and arises in part from conduct in Massachusetts.  As
such, the first factor weighs in favor of exercising
jurisdiction.

The remaining factors do not, however, strongly weigh in
favor of this Court asserting jurisdiction.  While Massachusetts
has an interest in affording justice when an injury has occurred
within its borders, the state's interest is less clear when the
dispute involves a Canadian citizen, an Ontario corporation and
a Delaware corporation.  See Ticketmaster-New York, Inc., 26 F.3d
at 211.

Further, this Court's intervention will not provide
effective or efficient relief.  This Court must, admittedly,
credit plaintiff's choice of forum.  Id.  Nevertheless, the
necessary evidence to resolve this claim has been developed
outside of the forum in Canada.  Id. (finding that witnesses and

key evidence outside the forum weighs against exercising jurisdiction).  Plaintiff is also subject to a mirror-image suit in Canada, making the present claim duplicative and inefficient.

Finally, no strong substantive social policy favors resolution of the claims in this forum.  This Court in this case is not providing a convenient forum for residents to seek redress against non-resident actors which is its prime policy consideration. <u>See</u> <u>Sawtelle</u>, 70 F.3d at 1395.

In light of the Court's relatedness and purposeful availment findings, these "Gestalt factors" are mixed and, consequently, do not tip the balance either in favor of or against exercising jurisdiction.

### d. Conclusion

Tallying the results, plaintiff has satisfied its burden of showing sufficient contacts with Massachusetts to justify the exercise of personal jurisdiction. The question of whether it should proceed to consider plaintiff's petition for declaratory judgment weighs in the balance.

### B.   Declaratory Judgment

#### 1.   Legal Standard

In addition to dismissal under Fed. R. Civ. P. Rule 12(b)(2), defendants also ask the Court to exercise its discretion to dismiss plaintiff's declaratory judgment claim. The Declaratory Judgment Act provides this Court with authority

"...[to] declare the rights and other legal relations of any interested party seeking such declaration...." 28 U.S.C.A. § 2201.  Litigants, however, do not have an "absolute right" to declaratory relief. See Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995).  Federal courts maintain discretion to grant a declaratory judgment and are permitted, if not required, to note similar or parallel proceedings, including those in foreign countries. See Farrell Lines Inc. v. Ceres Terminals Inc., 161 F.3d 115, 117 (2d Cir. 1998) (declining declaratory relief due to a parallel suit in a foreign country).

The present action is the near-mirror image of the claims pending in Canada.  Defendants are pursuing a claim of trade secret and confidential information misuse against plaintiff and plaintiff's affiliates.  Given that pending parallel suit, this Court must consider whether declaratory judgment here is appropriate.

The parties contest the appropriate standard to guide the Court's discretion.  Defendants argue the Court should rely on four factors used by this jurisdiction to evaluate parallel state court proceedings. See U.S. Liability Ins. Co. v. Wise, 887 F. Supp. 348, 350 (D. Mass 1995) (quoting Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 966 (4th Cir. 1994)).  In contrast, plaintiffs assert the Court should rely on factors tailored to assess parallel foreign court proceedings.  Because the present

case concerns a parallel foreign court proceeding as opposed to a parallel state claim, the Court will follow the Second Circuit Court of Appeals' five factor test. See Dow Jones & Co., 237 F. Supp. 2d at 437-47.

To determine whether to enter a declaratory judgment when there is a pending parallel suit in a foreign jurisdiction, the Court ought to consider the following five factors:

(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved;

(2) whether a judgment would finalize the controversy and offer relief from uncertainty; ...

(3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata;

(4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and

(5) whether there is a better or more effective remedy.

In re Air Crash Near Nantucket Island, Massachusetts, on October 31, 1999, 392 F. Supp. 2d 461, 473 (E.D.N.Y 2005).

## 2.   Application

### a. Useful Purpose

First, the Court must determine whether "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue." Dow Jones & Co., 346 F.3d at 432.  Under this factor, Courts normally consider the extent and effect of a judgment. See In re Air Crash, 392 F. Supp. 2d at 475.

While a declaratory judgment may clarify and settle the present controversy, it is not likely to settle the broader allegations of trade secret misuse. This Court is not satisfied that its judgment will discourage defendants from pursuing their claims against plaintiffs in Canada. See Dow Jones & Co., 346 F.3d at 439. To date, the present action has failed to deter the Ontario court or defendants. They proceeded to add Mueller Systems to the Canadian proceedings even after this complaint was filed. While this Court may enter an order and, in effect, preemptively declare that a foreign judgment against the plaintiff will have no effect in the United States, "a foreign tribunal may just as cavalierly ignore this Court's order." See id. at 438. A decision from a court in the United States is not binding on Canadian courts. As such, this Court is not convinced that a declaratory judgment will serve to clarify or settle the misappropriation allegations and may, in fact, create the potential for conflicting judgments.

Furthermore, the exercise of jurisdiction under the Declaratory Judgment Act is generally not justifiable

> where a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment... [as] the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present.

AmSouth Bank v. Dale, 386 F.3d 763, 787 (6th Cir. 2004). A declaratory plaintiff can rely on such a remedy only when "some

additional harm, not merely waiting for the natural plaintiff to sue, will befall the... plaintiff in the meantime." Id. at 786. A declaratory judgment serves a useful policy purpose when a declaratory plaintiff will avoid accruing damages or further loss through immediate clarification of the legal relations between parties. Id. Plaintiff does not allege any additional harm outside of a "reasonable apprehension" of being sued by defendants. Consequently, this Court concludes that the remedy sought will serve no useful purpose.

### b. Settling the Controversy

The second factor this Court must consider is whether the declaratory judgment will "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Dow Jones & Co., 346 F.3d at 432. Although many of the same reasons discussed earlier apply, courts particularly note (1) whether the controversy arose in the United States or a foreign country and (2) whether the laws of a foreign country or the United States apply to its resolution. Id. at 437. Generally, courts are hesitant to resolve claims governed by foreign law, reasoning that they cannot finalize a controversy when applying the laws of another sovereign.

To bring into focus both the location of the harm and the governing law, some courts engage in a choice of law analysis. See, e.g., Aruba Hotel Enterprises N.V. v. Belfonti, No. CIVA

307CV-1297 JCH, 2008 WL 185526, at *3 (D. Conn. Jan. 17, 2008).
Plaintiff does not, however, allege sufficient information to
permit this Court to conduct a choice of law inquiry with
confidence.  The location of the alleged wrongdoing and the
applicability of the Confidentiality Agreement between
defendants and parties affiliated with plaintiff, both relevant
variables, are not clear.

For many of the same reasons stated in the previous
section, this Court is not persuaded that its actions will
settle the controversy.  This Court's decision would only
provide certainty and potential relief in the United States.
Because the Canadian litigation has already progressed farther,
the Canadian court likely will not find a declaratory judgment
to be persuasive or authoritative. See Basic v. Fitzroy Eng'g,
Ltd., 949 F. Supp. 1333, 1341 (N.D. Ill. 1996), aff'd, 132 F.3d
36 (7th Cir. 1997).  Plaintiff has failed to show that the laws
of this jurisdiction govern the controversy, such that a
judgment of this Court "will be neither self-executing nor in
and of itself binding on or recognized by foreign tribunals."
Dow Jones & Co., 346 F.3d at 438-439.  As such, this Court is
not satisfied that the proposed remedy will settle the
controversy.

### c. Procedural Fencing

This Court must also consider whether plaintiff's complaint is being used for procedural fencing or "to provide an arena for a race for res judicata." Id. at 432.  This prong focuses on the claim itself and the timing of competing actions by the parties. See Basic, 949 F. Supp. at 1339-40.

Plaintiff appears to be pursuing this declaratory judgment "in the hope that the [foreign] court would relinquish its jurisdiction over the issues presented." Id. at 1339.  Aside from explicitly stating plaintiff's hope that a judgment will discourage defendants from pursuing it in Canada, plaintiff's procedural conduct suggests this suit is an attempt to control the forum.  In early 2015, Mueller sought to amend its answer in Canada to clarify the relationship between Mueller Water Products and Mueller Systems shortly after filing the initial declaratory judgment action in Virginia.  Mueller's subsequent effort to peg liability on Mueller Systems as the sole developer of the 420 RDM device via its motion for summary judgment in Canada indicates an effort to circumvent the Canadian suit and proceed solely in the United States.  While plaintiff was able to resolve potential patent liability through the Virginia litigation, its pursuit of this claim in parallel with the Canadian litigation strongly suggests procedural fencing.

In addition to trying to control the forum, plaintiff appears to be trying to pre-empt a Canadian judgment. See Eastman Kodak Co. v. Kavlin, 978 F. Supp. 1078, 1090 (S.D. Fla. 1997) (observing that plaintiff was "quite clearly" seeking to minimize the effect of a possible adverse judgment in Bolivia via a declaratory judgment).  Courts have recognized that

> this strategy is improper; the DJA is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse.

Basic, 949 F. Supp. at 1340 (internal quotations omitted).  As discussed above, aside from showing some immediate or unusual harm, which plaintiff has failed to demonstrate, plaintiff cannot utilize a declaratory judgment to control the forum or render a judgment from another court unenforceable. See AmSouth Bank, 386 F.3d at 787.

### d. Friction Between Sovereign Legal Systems

The fourth item this Court ought to consider is whether a declaratory judgment would create improper friction between sovereign legal systems or encroach on another Court's domain. See Dow Jones & Co., 346 F.3d at 432.  It can hardly be denied that this Court would create tension with a foreign tribunal if it were to apply our own federal law in a declaratory judgment. See In re Air Crash, 392 F. Supp. 2d at 478.  The converse is,

however, more complicated.  The First Circuit Court of Appeals
has instructed that

> comity is not a matter of rigid obligation, but, rather,
> a protean concept of jurisdictional respect [which] like
> beauty, sometimes is in the eye of the beholder.

Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren, 361
F.3d 11, 19 (1st Cir. 2004).

Because the present action is a replication of the Canadian
action, a declaratory judgment here for Mueller Systems is
likely to present an unnecessary challenge to the enforceability
of a legitimate foreign court's decision. See Chevron Corp. v.
Naranjo, 667 F.3d 232, 246 (2d Cir. 2012).  In addition to
standing ready for trial, the Canadian court permitted Mueller
Systems to be added to the case, asserting jurisdiction over the
plaintiff in spite of the pendency of this action.  A
declaratory judgment here may create friction by encouraging
other parties to seek to avoid potential enforcement of Canadian
judgments in the United States. See id.

### e. Effectiveness of Remedy

Finally, this Court must consider whether plaintiff has
access to a more effective or efficient remedy. See Dow Jones &
Co., 346 F.3d at 432.  Here, the Canadian action is immediately
available and better suited to serve the interests and
conveniences of the parties.  See id. at 443.  First, after
several years, it has progressed to the summary judgment stage.

Moreover, the Ontario court in its summary judgment decision accepted the "group enterprise" theory asserted by defendants, thus retaining Mueller Canada and its affiliates as parties to the suit.  Admittedly, Mueller Systems was neither a signatory to any agreement with defendants nor a party to the Canadian action until late 2015.  As the alleged independent developers of the 420 RDM device, however, their liability, if any, is likely clarified in relation to the larger group of Mueller affiliates.  Because the Canadian court is poised to consider the relevant issues at trial, it would be inefficient and duplicative for this Court to entertain plaintiff's request for declaratory relief.

Plaintiff will more appropriately and effectively be able to raise the present issues in a pleading responsive to any enforcement action of a Canadian judgment in the United States, if any is threatened or brought by defendants. See Basic, 949 F. Supp. at 1341.  As such, this Court is not convinced that the present action is the most effective or efficient remedy available to the parties.

### 3.  Conclusion

In light of the above analysis, the Court will exercise its discretion and decline to consider this petition for declaratory relief.  There is therefore no need to stay these proceedings until the Canadian litigation is resolved.

## <u>ORDER</u>

For the foregoing reasons, defendants' motion to dismiss (Docket No. 12) is, with respect to want of personal jurisdiction, **DENIED,** but is, with respect to the Court's discretion pursuant to the Declaratory Judgment Act, **ALLOWED.**

**So ordered.**

<u>/s/ Nathaniel M. Gorton</u>
Nathaniel M. Gorton
United States District Judge

Dated: August 4, 2016